IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JUSTIN RANDOLPH MITCHELL,                )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )   1:17CV879
                                         )
FORSYTH COUNTY SHERIFF OFFICE,           )
et al.,                                  )
                                         )
        Defendants.                      )

## MEMORANDUM OPINION AND ORDER OF
## UNITED STATES MAGISTRATE JUDGE

This is a *pro se* civil rights action filed under 42 U.S.C. § 1983 by Plaintiff Justin Randolph Mitchell, an inmate in the North Carolina Department of Correction. His central allegations in this case are that some of the Defendants opened and/or improperly interfered with his legal mail and searched his legal and medical papers outside his presence. Plaintiff names as Defendants 1) the Forsyth County Sheriff's Office, 2) former Sheriff of Forsyth County, North Carolina, William T. Schatzman, and 3) current or former employees at the Forsyth County Detention Center, Robert Slater, R.L. Settles, Officer Hinton, and Corporal Fleming. Following discovery in the case, Defendants filed a Motion for Summary Judgment [Doc. #48], which has now been fully briefed by the parties and is before the Court.

Plaintiff's Claims

The Complaint alleges that, on September 2, 2016, while housed at the Forsyth County Detention Center, Plaintiff received legal mail from the North Carolina Industrial Commission that had been opened and read outside his presence in violation of the Detention Center's

mail policy. (Complaint [Doc. #1], § IV(D).) It further alleges that this occurred again on November 10, 2016. (Id., Attach. Claim Two.)

The Complaint further alleges that on January 20, 2017, Plaintiff was allegedly removed from his cell and placed in a multi-purpose room so that his cell could be searched. (Id., Attach., Claim Three.) Defendant Fleming allegedly passed though the multi-purpose room and searched Plaintiff's cell for half an hour before returning and questioning Plaintiff concerning how he obtained a document containing the names of medical personnel. (Id.) Plaintiff told him that he obtained it through a subpoena connected to another civil lawsuit he had filed. (Id.) The Complaint asserts that Defendant Fleming read Plaintiff's legal documents and medical records during the search. (Id., § II(D), Attach.)

Plaintiff's next set of allegations concerns another suit he filed in this Court. The Complaint states that the Court sent Plaintiff legal mail connected to that case in mid-May of 2017. (Id., § IV(D), Attach., Claim Four.) Defendant Hinton, who was working to sort mail, sent the legal mail to a detainee on another floor. (Id.) The Complaint claims that an officer on that floor opened and read the mail before giving it to the other detainee, who returned it to a guard. (Id.) An officer listed as Sgt. Ramirez then delivered the mail to Plaintiff. (Id.)

The Complaint next alleges that, on July 4, 2017, Plaintiff received legal mail from an attorney representing the defendants in one of Plaintiff's other lawsuits. (Id., Attach., Claim Five.) Because that mail had also been opened outside his presence, Plaintiff called a guard and complained. (Id.) He later learned that Defendant Hinton had opened the mail because she believed she felt metal in the envelope. (Id.)

Finally, the Complaint alleges that on August 12, 2017, Plaintiff received more mail from the same attorney. (Id., Attach., Claim Six.) The mail arrived on a weekend and was held for four days until an officer not named in this lawsuit came to work on August 16, 2017. (Id.) Plaintiff then filed the present Complaint.

Based on these allegations, Plaintiff is suing the Forsyth County Sheriff's Office in its individual and official capacity, Defendants Schatzman, Hinton, and Fleming in their individual and official capacities, and Defendants Slater and Settles in their official capacities only. (Id., § II(B); Order [Doc. #10].) He claims that the Sheriff's Office is liable because it sets policies for the Detention Center, that Defendant Schatzman is liable because he is responsible for the Detention Center and its inmates, that Defendants Slater and Settle are liable because they met with him concerning the events in the Complaint, that Defendant Hinton opened his legal mail outside his presence and negligently sent his legal mail to another inmate, and that Defendant Fleming improperly read his legal papers and medical documents while searching his cell. (Complaint, § II(D).)

Defendants' Evidence

In conjunction with their Brief [Doc. #49] supporting their Motion for Summary Judgment, Defendants provide three separate affidavits. The first is from Defendant Schatzman, who states that he was the Sheriff of Forsyth County during the relevant time periods, that he had final policy making authority in the Forsyth County Sheriff's Office, and that it was always the policy, procedure, and custom of that office to comply with the law regarding inmate rights. (Defendant's Brief, Attach. 1, ¶¶ 2-6.) Defendant Schatzman hired officers certified and trained by appropriate organizations. (Id., ¶ 8.) He also mandated that

3

each detention officer receive on the job training from senior officers and supervisors, including regarding policy addressing the handling of inmate mail. (Id., ¶ 9.) The affidavit includes a copy of that policy as Exhibit A. The policy defines "General Correspondence" and "Privileged Mail," with the latter category including legal mail. (Policy, § 589.2.) Relevant to the present action, it mandates that Privileged Mail "be opened and searched, but not read, in the presence of the inmate by detention staff to ensure it does not contain contraband." (Id., § 589.8(C).)

The second affidavit is from Defendant Hinton. She remains employed in the Detention Center and was so employed at the time of the incidents alleged in the Complaint. (Defendant's Brief, Attach. 2, ¶¶ 2-3.) She states that on one occasion she did mistakenly misdirect a piece of mail addressed to Plaintiff by sending it to another inmate. (Id., ¶ 6.) She further states that she reported her mistake to a supervisor and that Plaintiff also filed a grievance concerning the incident. (Id., ¶¶ 8, 11.) Defendant Hinton also relates that on another occasion, she mistakenly opened Plaintiff's privileged legal mail. (Id., ¶ 9.) She again reported this to a supervisor and relates that she also spoke to Plaintiff, apologized, and assured him that she did not read the contents of the mail. (Id.) She concludes by saying that "over the course of several months, [she] mistakenly opened [Plaintiff's] privileged mail outside his presence twice and misdirected it, unopened, once," but did not read any of it. (Id., ¶ 12.) She also received two disciplinary warnings because of her handling of Plaintiff's mail. (Id., ¶ 13.)

4

The third affidavit was submitted by Defendant Hinton's former supervisor at the Detention center, David Ramirez. Ramirez states that on May 17, 2017, Defendant Hinton misdirected Plaintiff's unopened legal mail to another inmate. (Defendant's Brief, Attach. 3, ¶¶ 7.) He further states that on July 3, 2017, he became aware that an officer other than Defendant Hinton had opened Plaintiff's legal mail by mistake, that he hand-delivered that mail to Plaintiff, and that he explained that the mail was not opened by Defendant Hinton. (Id., ¶¶ 4-6.) Based on some of the problems involving Defendant Hinton and Plaintiff's mail, Ramirez counseled Defendant Hinton on proper legal mail procedures, gave her a disciplinary warning, and briefly assigned her to other duties. (Id., ¶¶ 8-10.)

In addition to the three affidavits just discussed, Defendants also submitted a document from Forsyth County Superior Court denying Plaintiff's request to proceed as an indigent in a civil case in that court on September 11, 2017. (Defendant's Brief, Attach. 4) The case named Defendants Schatzman, Slater, and Settles and covered several of the incidents set out in Plaintiff's current Complaint regarding the opening of his legal mail. The state court checked a box on a form finding the action to be frivolous and ordering that it be dismissed. There is a handwritten notation on the form that reads "Prior pending federal action."

Plaintiff's Evidence

Plaintiff also includes three affidavits, all his own, in opposition to Defendants' Motion for Summary Judgment. In the first affidavit, he basically reiterates the facts from his Complaint regarding the alleged problems with his mail by stating that in September of 2016 he received mail from the North Carolina Industrial Commission that had been opened, that

5

on November 10, 2016 this occurred a second time, that in mid-May of 2017 mail from this Court was redirected to another inmate by Defendant Hinton, and that on July 3, 2017 he received legal mail from an attorney that had been opened outside his presence by Defendant Hinton. (Plaintiff's Affidavit [Doc. #54].) In his second affidavit, Plaintiff states simply that the Forsyth County Detention Center has cameras and records video footage that pertains to this case. (Plaintiff's Affidavit [Doc. #54-1].) He attaches a letter dated September 26, 2017 from "Sgt. Whitt," the Security Threat Group Commander with the Forsyth County Sheriff's Office, which states that Whitt reviewed video footage from the search of Plaintiff's legal paperwork, that several staples were removed as contraband, and that he did not see any action which would indicate reading of the material. Whitt further states that the papers were searched on a bench outside a holding cell, giving Plaintiff a clear view of the search.

Plaintiff's third affidavit addresses the alleged search of Plaintiff's cell and states that, on January 20, 2017, he was taken from his cell to a multi-purpose room, that Defendant Fleming eventually passed him and went into the dormitory, that Defendant Fleming reentered the multi-purpose room holding a sheet of paper with the names of medical employees, and that he questioned Plaintiff as to how he obtained the names. (Plaintiff's Affidavit [Doc. #54-2].) Plaintiff states that he then showed Defendant Fleming a subpoena he used to obtain the record with the names. (Id.) He attaches a copy of the subpoena.

Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists. A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S.

6

242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials).

## Discussion

Defendants argue that all of Plaintiff's claims should be dismissed based on the doctrines of *res judicata* or collateral estoppel because of the dismissal of the case Plaintiff filed in Forsyth County Superior Court. As they note, this case was possibly dismissed as frivolous. However, there is only a checked box to indicate that this is the case. A handwritten notation on the document provided by Defendants in support of their argument actually indicates that the dismissal occurred because of a pending action in federal court. Given the lack of any explanation for the dismissal and the ambiguity of the reasons for the dismissal, the Court will not rely on this document or address this issue further.

Turning now to Plaintiff's official capacity claims against Defendants Slater and Settles, Plaintiff states in his Response Brief [Doc. #53] that he agrees that the Court should grant

7

summary judgment at to these two defendants. (Response Brief at 20.) The Court notes that the Complaint sets out no viable claim against these two Defendants in any event, but it will act on Plaintiff's concession and dismiss Plaintiff's claims as to Defendants Slater and Settle.

As to the remaining Defendants, most of Plaintiff's allegations concern the handling or mishandling of his legal mail by Defendant Hinton. Although the parties' evidence disagrees somewhat regarding certain specific facts and dates, there is no material dispute that Defendant Hinton misdirected Plaintiff's legal mail on one occasion and improperly opened it outside his presence on one or two other occasions. Plaintiff's Complaint alleges two additional instances of improper opening of his mail outside his presence, but there is no allegation or evidence that Defendant Hinton or any other Defendant named in the case was involved in those incidents.

One incident of misdirecting legal mail and two incidents of opening it are insufficient to maintain a claim for relief. In this regard, the Fourth Circuit has held that a few isolated incidents are not sufficient to state a claim for relief, particularly where they are contrary to policy and accidental or unauthorized. Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983). "Rather, an inmate must show that prison officials 'regularly and unjustifiably interfered with' his or her mail." Adkins v. Chandler, No. 2:19-cv-210, 2020 WL 885968, at *3 (S.D. W. Va. Feb 24, 2020) (unpublished) (citing cases). Further, as to any delay in delivery caused by the misdirection of Plaintiff's mail, "[t]o state a claim based on delay or nondelivery of legal mail, a prisoner must allege adverse consequences as a basis for the allegation that the delay or nondelivery deprived him of meaningful access to the courts." Lloyd v. Vincent, No. C.A. 4:03-1546-25BH, 2004 WL 3249250 (D.S.C. Sept. 10, 2004). Here, the evidence viewed in the

8

light most favorable to Plaintiff still establishes only "isolated incidents" over a period of several months where Defendant Hinton acted contrary to the mail policy of the Detention Center. She did not "regularly" interfere with Plaintiff's mail and he points to no deprivation of access to the courts or any other harm due to the one incident where his mail was temporarily diverted and delayed. Plaintiff's claim against Hinton fails as a matter of law and Defendants' Motion for Summary Judgment will be granted as to her with respect to the claim under § 1983.

Plaintiff also seeks damages against Defendant Hinton based on negligent infliction of severe emotional distress, a claim he would have to raise under state law. However, Plaintiff fails to even plead the required elements of such a claim. To establish a claim of negligent infliction of severe emotional distress in North Carolina, a plaintiff "must show that defendant[] (1) negligently engaged in conduct, (2) which would reasonably and foreseeably cause plaintiff[] severe emotional distress, and (3) which did, in fact, cause severe emotional stress." Jolly v. Academy Collection Service, Inc., 400 F. Supp 2d 851, 868 (M.D.N.C. 2005) (citing Pardasani v. Rack Room Shoes, Inc., 912 F. Supp. 187, 192 (M.D.N.C. 1996)). Mere upset or disappointment is not sufficient. Instead, "[t]he term 'severe emotional distress' means 'an emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.'" Riddle v. Buncombe County Board of Education, 805 S.E.2d 757, 760 (N.C. App. 2017) (quoting Sorrells v. M.Y.B. Hosp. Ventures of Asheville, 334 N.C. 669, 672, 435 S.E.2d 320, 322 (1993)). Plaintiff neither alleges such a level of emotional distress nor alleges actions by

9

Defendant Hinton that could reasonably and forseeably lead to such severe distress. Therefore, Defendants' Motion will be granted as to this claim against Defendant Hinton.

Plaintiff also claims that Defendant Fleming directly violated his rights by searching his legal and medical papers without Plaintiff being present. Defendant Fleming moves for summary judgment on that claim based on the fact that he was not properly served with the Complaint in this case because the summons came to his place of employment while he was temporarily away on military training. Defendant Fleming first raised this issue in the Second Affirmative Defense in his Answer [Doc. #25] to the Complaint and Exhibit B attached thereto. In the Answer, he stated that the Complaint should be dismissed for lack of service pursuant to Rule 12(b)(4) and (5) of the Federal Rules of Civil Procedure. However, Defendant Fleming did not, as required by Local Rule 7.3 of this Court, file a separate motion and brief seeking dismissal. Therefore, the issue did not come before the Court at that time.

Had Defendant Fleming filed a proper motion at or before the filing of his answer, the Court would likely have denied the motion to dismiss and allowed Plaintiff more time to complete service. "Before a case [involving a plaintiff proceeding *in forma pauperis*] may be dismissed based on failure to effectuate service, the Court must first ensure that the U.S. Marshal has used reasonable efforts to locate and obtain service on the named defendants." Adkins v. Jackson, No. 5:15-cv-102-FDW, 2018 WL 1279338, at *3 (W.D.N.C. Mar. 12, 2018) (unpublished) (citing Greene v. Holloway, 210 F.3d 361 (4th Cir. 2000)). This is particularly true in the present case given the fact that Plaintiff is not only acting pro se, but also incarcerated. Indeed, dismissing the case without ensuring that such efforts are made would be an abuse of discretion. See Greene, 210 F.3d 361. The Court also notes that most

individual defendants employed at prisons and detention facilities, including the other Defendants in this case, do not object to the service of a complaint at their place of employment, even if they are not physically present at the time, because of a preference for avoiding the disclosure and use of their home addresses during the litigation.

In any event, Defendant Fleming did not bring the issue before the Court for a decision for more than a year after the service or attempted service of the Complaint, and after the close of discovery in the case. This presents the very real problem of potentially having to remedy any service issue at this late stage by employing necessary means to obtain an address where Defendant Fleming can be served and essentially restarting the case as to Defendant Fleming, a course the Court would certainly be willing to take if required. However, the Court need not address this argument further, since Defendants also addressed the merits of Plaintiff's claim against Defendant Fleming, and the case can be resolved on that basis instead.

Plaintiff contends that Defendant Fleming violated Plaintiff's federal constitutional rights by searching his cell and reading legal and medical papers outside of Plaintiff's presence. As Defendant Fleming correctly points out, inmates, including pretrial detainees, generally have no right to privacy in their cells, and detention officers may search them for any reason with or without the inmates being present. Hudson v. Palmer, 468 U.S. 517, 529-30 (1984) (no expectation of privacy in a prison cell); Block v. Rutherford, 468 U.S. 576, 590-92 (1984) (pretrial detainees have no right to be present for cell searches); see also Guerrero v. Rivera, No. EDCV 13-0092-JGB(JPR), 2013 WL 878285, at *4-5 (C.D. Ca. Mar. 8, 2013).

Issues may arise if such searches were undertaken to retaliate against a prisoner for exercising their constitutional rights. See Herman v. Grier, No. 1:18-cv-219, 2019 WL

11

4491521, at *5 (W.D.N.C. Sept. 18, 2019) (citing cases). Here, however, the Complaint makes no clear allegation of such retaliation. To the extent that it could be read as claiming that Defendant Fleming intended to harass Plaintiff for previous court actions related to the papers searched by Fleming, such a claim cannot survive summary judgment. Not only does Plaintiff provide no evidence of any retaliation, but "[a] plaintiff alleging that government officials retaliated against [him] in violation of [his] constitutional rights must demonstrate, *inter alia*, that [he] suffered some adversity in response to [his] exercise of protected rights." American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of Governors of University of North Carolina, 902 F.2d 1134, 1140 (4th Cir.1990)). "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." Id. Plaintiff neither alleges nor provides any evidence of any impairment of his rights or resulting adversity. Instead, he alleges only that Defendant Fleming questioned him regarding his possession of a particular document and that he informed Fleming how he obtained it. He alleges no further action by Defendant Fleming following the explanation and no resulting injury. This is insufficient to survive summary judgment. Similarly, to the extent Plaintiff may be contending that the search interfered with his right of access to the courts, he has failed to show any impact on his ability to continue litigating his suits. See Lewis v. Casey, 518 U.S. 343, 349 (1996). Plaintiff's claims against Defendant Fleming will also be denied.

Turning next to Defendants Schatzman and the Forsyth County Sheriff's Department, Defendants note first that the Sheriff's Department is not a legal entity capable of being sued.

In response, Plaintiff notes that he has, in any event, asserted his claims against Sheriff Schatzman in his official capacity. Plaintiff alleges in his Complaint that Defendant Schatzman is liable for Defendants Hinton and Fleming's violations of Plaintiff's rights because Defendant Schatzman sets the unconstitutional polices or practices. However, Plaintiff has identified no policy, practice, or custom followed by any Defendant that led to the alleged violations of his constitutional rights. Indeed, the only policy in evidence as having been in place at the time of Plaintiff's incarceration in the Forsyth County Detention Center clearly prohibits the opening of Plaintiff's legal mail outside his presence. In briefing the case, Plaintiff attempts to alter or amend his claim to allege that Defendant Schatzman failed to properly train Defendants Hinton and Fleming to follow the applicable policy. (Plaintiff's Response, [Doc. #53] at 16-17.) However, Plaintiff points to no actual evidence of any training failure and makes only speculative and insufficient allegations in that regard. Further, any training deficiency as to Defendants Hinton and Fleming could not have violated Plaintiff's rights because, as just discussed, Plaintiff has produced no evidence that the incidents at issue resulted in a violation of his constitutional rights. For these reasons, Plaintiff's claims against Defendant Schatzman and the Forsyth County Sheriff's Office also fail.

For all of these reasons, Defendants' Motion for Summary Judgment will be granted as to all of Plaintiff's claims.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. #48] is granted, that Plaintiff's claims are denied, and that this action is dismissed.

This, the 31st day of March of 2020.

/s/ Joi Elizabeth Peake
United States Magistrate Judge